# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **L.F.**

**No. 17-0851** (Jackson County 17-JA-79)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father B.F., by counsel Ryanne A. Ball, appeals the Circuit Court of Jackson County's September 26, 2017, order terminating his parental rights to L.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), D. Kyle Moore, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the filing of the instant petition, the DHHR filed an abuse and neglect petition against petitioner and the mother in January of 2016. The parents stipulated to exposing the child to domestic violence and engaging in drug use in the child's presence. The parents were granted post-adjudicatory improvement periods, which they successfully completed, and the petition against them was dismissed in July of 2016. Thereafter, the mother filed an emergency motion seeking to suspend petitioner's parenting time. At the hearing on the motion in January of 2017, petitioner admitted to using methamphetamine shortly after his mother's death in November of 2016. Petitioner denied that he had further issues with methamphetamine after that isolated incident. However, after a hearing held later in January, he tested positive for amphetamine and methamphetamine. Based upon the evidence, the circuit court ordered the DHHR to enter into a ninety-day safety plan with petitioner to include drug screens, supervised visits, counseling, and further ordered that petitioner have no contact with the mother. Petitioner failed to submit to drug screens or visit with the child following the circuit court's order and the DHHR filed the instant

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

petition in April of 2017, alleging that his drug use impaired his parenting skills and rendered him incapable of safely caring for the child.

The circuit court held an adjudicatory hearing in June of 2017, during which petitioner stipulated that his substance abuse negatively impacted his ability to parent the child and that he exposed the child to domestic violence. The circuit court accepted the stipulation, adjudicated petitioner as an abusing parent, and set the case for disposition.

In August of 2017, the circuit court held a dispositional hearing, during which it heard evidence on both petitioner's motion for a post-adjudicatory improvement period and the guardian's motion to terminate parental rights. Petitioner testified that he had not abused drugs for nearly two months and moved to admit into evidence four negative drug screens taken the week before the hearing between August 15th and August 24th. However, he admitted that he either failed to submit to testing or tested positive for controlled substances several times throughout the proceedings, many positive tests having been taken in June of 2017; petitioner also admitted that he was incarcerated during the month prior to the dispositional hearing. When asked whether he had a drug abuse problem and needed treatment, petitioner was inconsistent in his responses, at one point stating "I can say that I'll never do drugs again and be fully confident" despite having admitted that he was seeking admission into a rehabilitation program. Petitioner admitted that he did not initiate services with the DHHR and failed to attend his parental fitness evaluation.

A Child Protective Services ("CPS") worker testified that drug testing, supervised visits, and a parental fitness evaluation had been arranged for petitioner but that he failed to contact the DHHR to comply with the services. The CPS worker testified that petitioner drug tested for ten days leading up to the dispositional hearing, but failed to comply with any other services. Further, petitioner attempted to contact the CPS worker only three or four times, did not request additional services, and only attempted to set up supervised visits the week of the dispositional hearing. Ultimately, the circuit court found that petitioner's testimony was not credible, that he failed to screen or tested positive for drugs at least eight times since the initiation of the case in April, and that he had not participated in services or made an effort to initiate services with the DHHR. The circuit court found that petitioner failed to follow through with rehabilitative efforts and, based upon his complete lack of participation and insight to his actions, found there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the child's welfare. As such, the circuit court denied petitioner's motion for a post-adjudicatory improvement period and terminated his parental rights.[2] It is from this dispositional order dated September 26, 2017, that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]During the underlying proceedings, the circuit court granted the mother a post-adjudicatory improvement period, in which she is currently participating. The permanency plan for L.F. is reunification with his mother pending her successful completion of the improvement period. The concurrent permanency plan is for adoption.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues on appeal that the circuit court erred in terminating his parental rights without first granting him an improvement period. We disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, the record establishes that petitioner failed to demonstrate his ability to fully participate in an improvement period. Throughout the underlying proceedings, petitioner failed to maintain contact with the DHHR and participate in the services offered. He did not comply with drug screens as ordered by the circuit court and, thus, was unable to visit with his child. Though petitioner argues that he had not used controlled substances for the two months leading to the dispositional hearing, the circuit court found his testimony lacked credibility in light of his prior failures to screen and his incarceration the month prior to disposition. Further, this is petitioner's second time participating in abuse and neglect proceedings. Petitioner was granted a six-month improvement period in the prior case and subsequently admitted to abusing drugs only four months after the petition was dismissed. We have previously held that it is possible for a person to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." *W.Va. Dep't of Human Servs. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990). Fully participating in an improvement period necessarily requires implementing the parenting skills that are being taught through services. *In re M.M.*, 236 W.Va. at 115, 778 S.E.2d at 345. The record demonstrates that petitioner received services prior to the instant abuse and neglect proceedings and yet failed to implement any techniques taught, as evidenced by the filing of a second petition for nearly identical reasons, less than one year after the first petition was dismissed. Contrary to his argument that he would

3

successfully complete an improvement period if given the chance, his actions during the proceedings below show a complete lack of compliance with what was required of him. Petitioner failed to consistently drug test and, when he did test, tested positive for controlled substances several times; did not visit his child; did not attend his parental fitness evaluation; and was arrested during the pendency of the proceedings. As such, petitioner did not demonstrate that he was likely to substantially comply with the terms or conditions of an improvement period.

Further, we find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

We find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Petitioner failed to consistently participate in drug screens throughout the proceedings below and tested positive for drugs several times in the month of June, despite previously receiving services targeted at addressing his drug abuse. Petitioner's testimony shows that he was reluctant to accept that he had a drug abuse problem or that he truly needed assistance in overcoming the abuse. Further, petitioner did not participate in supervised visitation due to his failure to drug screen and failed to attend his parental fitness evaluation. While petitioner argues that terminating his parental rights without granting him an improvement period violated his due process rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). As mentioned, this is petitioner's second time participating in abuse and neglect proceedings. Petitioner knew that his drug abuse could lead to the termination of his parental rights and, despite this knowledge, continued abusing drugs after the prior proceedings were dismissed. Based on the evidence outlined above, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the child's welfare. Accordingly, we find no error.

Lastly, because the proceedings in circuit court regarding the mother are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 26, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: February 23, 2018

5

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker